HAINES (Sara Sue), Appellant, v. MID-CENTURY INSURANCE COMPANY, Respondent: HAINES (Gary) and another, Defendants.

*No. 267. Argued April 29, 1970.—Decided June 5, 1970.*
(Also reported in 177 N. W. 2d 328.)

For the appellant there was a brief by *Johns, Flaherty, Harman & Gillette* of La Crosse, and oral argument by *Donald J. Harman.*

For the respondent there was a brief by *Steele, Smyth, Klos & Flynn* and *Marvin H. Davis,* all of La Crosse, and oral argument by *Mr. Davis.*

WILKIE, J. There is only one issue on this appeal: Does Wisconsin or Minnesota law govern the effect of the policy of insurance covering plaintiff's husband's automobile?

The parties concede that Wisconsin law governs the tort aspects of this case.[1] The issue involved here relates solely to the contract aspects of the insurance policy issued by the respondent Mid-Century Insurance Company.

If the policy is governed by Minnesota law, the family-exclusion clause is effective to foreclose the plaintiff from recovering her damages from her husband's insurer.[2] If, on the other hand, the law to be looked to in deciding the efficacy of the family-exclusion clause of the policy is Wisconsin, then it is clear this exclusion can have no effect.[3]

---

[1] *See Zelinger v. State Sand & Gravel Co.* (1968), 38 Wis. 2d 98, 156 N. W. 2d 466; *Conklin v. Horner* (1968), 38 Wis. 2d 468, 157 N. W. 2d 579; *Heath v. Zellmer* (1967), 35 Wis. 2d 578, 151 N. W. 2d 664.

[2] *Minners v. State Farm Mut. Automobile Ins. Co.* (1969), 284 Minn. 343, 170 N. W. 2d 223; *Tomlyanovich v. Tomlyanovich* (1953), 239 Minn. 250, 58 N. W. 2d 855.

[3] Sec. 204.34 (2), Stats., makes it unlawful to include family-exclusion clauses in Wisconsin automobile liability insurance contracts.

Recently, this court, in *Urhammer v. Olson*,[4] involving a factual situation very similar to the instant one, specifically adopted the grouping-of-contacts approach for the resolution of conflicts questions pertaining to the validity and rights created by the provisions of a disputed contract. This approach had previously been suggested and discussed in several earlier cases.[5]

Sec. 188 of the Second Restatement of Conflicts [6] is the embodiment of this approach. That section provides:

"**188. Law Governing in Absence of Effective Choice by the Parties.**

"(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, as to that issue, has the most significant relationship to the transaction and the parties under the principles stated in sec. 6.

"(2) In the absence of an effective choice of law by the parties (see sec. 187), the contacts to be taken into account in applying the principles of sec. 6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue.

"(3) If the place of negotiating the contract and the place of performance are in the same state, the local law

---

[4] (1968), 39 Wis. 2d 447, 159 N. W. 2d 688.

[5] *Peterson v. Warren* (1966), 31 Wis. 2d 547, 556–560, 143 N. W. 2d 560; *Estate of Knippel* (1959), 7 Wis. 2d 335, 96 N. W. 2d 514. *See also: Wojciuk v. United States Rubber Co.* (1963), 19 Wis. 2d 224, 235c, 120 N. W. 2d 47, 122 N. W. 2d 737; *Lazarus v. American Motors Corp.* (1963), 21 Wis. 2d 76, 123 N. W. 2d 548.

[6] Restatement, *Conflicts of Laws* 2d, Proposed Official Draft, Part II, p. 200, sec. 188.

of this state will usually be applied, except as otherwise provided in secs. 189–199 and 203."

This section, in the absence (as here) of an agreement between the parties of their choice of law, permits a functional conflicts analysis under which the method is not to count contacts but rather to consider which contacts are the most significant and to determine where those contacts are found. It must be recognized that a contact can be considered to be significant only in terms of its relevance to a specific domestic law and the policy underlying that law.

Thus, the discussion must focus on the purpose of the Wisconsin statute, sec. 204.34 (2), declaring family-exclusion clauses to be invalid as compared to the Minnesota judge-made law giving effect to this type of clause.

In *Klatt v. Zera*,[7] this court said that the purpose of sec. 204.34 (2), Stats., is to prohibit exclusion clauses that would withdraw any coverage or protection required to be given under sec. 204.30 (3), the so-called omnibus coverage statute. In essence, the purpose of both these sections read together is to provide protection to innocent third persons injured by the negligent operation of motor vehicles by others regardless of the relationship between the victim and the driver.

On the other hand, the purpose of the Minnesota policy of giving effect to the family-exclusion clause was stated in *Tomlyanovich v. Tomlyanovich*,[8] as follows:

". . . The obvious purpose of the clause here involved is to exempt the insurer from liability to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury."

Thus, in essence the reason why Minnesota gives effect to a family-exclusion clause is to protect insurance

---

[7] (1960), 11 Wis. 2d 415, 105 N. W. 2d 776.

[8] *Supra*, footnote 2, at page 263.

companies from false claims. It should be noted that, by legislative action, Minnesota has recently invalidated family-exclusion clauses.[9] However, this invalidation came about after the policy was issued and the accident occurred in this case.

With these opposing purposes in mind, we must analyze the facts of this case in detail in light of the particular contacts listed in sec. 188 of the Restatement.

Before making that analysis, it is necessary to consider the application here of the special provisions of sec. 193 of the Restatement, which concerns the validity of insurance contracts. That section provides:

"**193. Contracts of Fire, Surety or Casualty Insurance.**
"The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless, with respect to the particular issue, some other state has a more significant relationship to the transaction and the parties, in which event the local law of the other state will be applied." [10]

Respondent contends that the principal location of the insured risk is Minnesota. But as the Restatement comment to sec. 193 indicates, there may be no principal location of the insured risk in the case of moving vehicles.

". . . In such a case, the location of the risk can play little role in the determination of the applicable law. The law governing insurance contracts of this latter sort must be determined in accordance with the principles set forth in the rule of sec. 188." [11]

It is obvious that although the Haineses' automobile was to be garaged in La Crescent, Minnesota, it was to be used a great deal in La Crosse, Wisconsin, where Mr. Haines was employed.

[9] *See* sec. 1, subd. 1, 72A. 1491, Minn. Stat. (Laws of 1969, ch. 474, sec. 1, effective July 1, 1969).

[10] *Supra,* footnote 6, at page 243, sec. 193.

[11] *Id.* comment *a.*

While in *Peterson v. Warren* [12] we cited the forerunner of this section when we held that Minnesota law should apply to the determination of legal-validity questions pertaining to an insurance contract covering vehicles used in a construction business, the vehicles there involved were admittedly located principally in Minnesota and we also held that whether the grouping-of-contacts test or the intention test was used, Minnesota law applied. [13] We are not faced with such a factual situation here. The particular issue here is as to the validity of the family-exclusion provision and we are governed in the selection of the law to apply to that issue by the method of analysis embodied in the grouping-of-contacts approach of sec. 188, Restatement.

The affidavits filed in support of and in opposition to the motion for summary judgment establish the following additional facts: The insurance policy in question was obtained by the defendant who was then a resident of La Crescent, Minnesota, in Mid-Century's office in La Crosse, Wisconsin. The policy was delivered in La Crosse, premiums were paid in La Crosse, and accident reports were made in La Crosse.

La Crescent, Minnesota, is a bedroom suburb almost totally dependent upon La Crosse for its existence. It is unclear from the affidavits and the record in this case whether the policy was issued by an agent licensed to do business in Minnesota. The trial court asserted that this was the case; however, the affidavits filed by plaintiff indicate otherwise. At oral argument it was asserted by the plaintiff's counsel that the policy was signed by one James Hall as issuing agent and the deposition of James Hall clearly shows that he was not licensed to issue policies of insurance in Minnesota. Unfortunately, the original policy is not found in this record. In any event, the dispute as to who issued the policy is not of over-

[12] *Supra*, footnote 5.
[13] *Id.* at page 558.

riding importance in this case because it is undisputed that the policy was issued in Wisconsin.

The trial court concluded that all the significant contacts involved in this case were with Minnesota. Accordingly, the trial court granted the insurer's motion for summary judgment. We must respectfully disagree.

At best the significant contacts are split between the two states. The place of negotiation and the place of contracting are in Wisconsin. Wisconsin, therefore, would have an interest in seeing that its policy of protecting injured parties, regardless of their relationship to negligent drivers, would be given effect in insurance contracts negotiated and entered into in this state. The place of performance of the contract is apparently equally divided between Wisconsin and Minnesota. Likewise, the location of the subject matter of the contract is in both states.

The domicile of the parties at the time of the accident was Minnesota. It could be argued that in that situation the Minnesota policy of discouraging collusion and fraud by its domiciliaries against insurance companies should be given controlling weight. However, this is offset by the fact that the complaint alleges that the plaintiff, at the time of the commencement of this action, was a resident of La Crosse, Wisconsin. In such a situation, Wisconsin's policy of not recognizing the family-exclusion clause becomes more important. Any fear that a plaintiff would purposefully move to this state in order to take advantage of Wisconsin's policy of nonrecognition of family-exclusion clauses is, for the most part, unfounded. It is doubtful that anyone would move from one state to another merely to take advantage of the latter's allegedly more favorable policies.

It is clear, therefore, that we are presented with a true conflicts case in that Minnesota and Wisconsin, having opposing policies, each has relatively equally significant contacts.

In deciding which law is finally to be applied in this situation, we must turn to an additional guide beyond the formulation contained in sec. 188 of the Restatement. In *Heath v. Zellmer*,[14] Mr. Justice HEFFERNAN, speaking for the court, detailed the five factors to be applied in making our choice-of-law decisions with respect to true conflicts questions presented in tort cases. These are:

"Predictability of results;
"Maintenance of interstate and international order;
"Simplification of the judicial task;
"Advancement of the forum's governmental interests;
"Application of the better rule of law." [15]

The only relevant factor here in making our choice of law is the fifth factor, namely, the "application of the better rule of law." We think the rule protecting the injured party's right to collect damages from the person or persons responsible for his injuries (even if a member of his family) and his insurer, is to be preferred over the rule preventing that recovery. Thus, we conclude that Wisconsin law applies. The argument that Wisconsin has the better rule of law received tacit confirmation by the Minnesota legislature when it enacted the statute invalidating the family-exclusion clause. Thus Minnesota law is now the same as Wisconsin.

Since Wisconsin law applies, the family-exclusion clause in the subject insurance contract is invalid and summary judgment in favor of the respondent insurance company was improperly granted.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

[14] (1967), 35 Wis. 2d 578, 151 N. W. 2d 664.
[15] *Id.* at page 596.